CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 12 2015

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CATHERINE VALDEZ, | ) |
|     Plaintiff, | ) Civil Action No. 7:14-CV-00263 |
| | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) |
| ARM WYN, LLC, | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
|     Defendant. | ) |

Plaintiff Catherine Valdez has moved for default judgment against Defendant Arm Wyn, LLC ("Arm Wyn"). For the reasons below, the court will grant that motion.

## Background

Valdez filed this action under the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. § 1692 et seq. She filed an amended complaint on June 30, 2014, which was served on Arm Wyn's registered agent on July 14, 2014. To date, Arm Wyn has not entered a notice of appearance or filed a responsive pleading in this matter.

In the amended complaint, Valdez alleges that Arm Wyn violated the Act while attempting to collect an alleged debt from her. Specifically, the complaint alleges that, on or around January 24, 2014, an employee, agent, and/or representative of Arm Wyn, who identified herself as "Mary," communicated with Valdez, purportedly to collect on an alleged debt. During that communication, Valdez informed Mary that she was represented by an attorney with respect to the alleged debt and provided her attorney's contact information. Compl. ¶ 9-10. Nonetheless, Mary contacted Valdez again. Id. ¶ 11. In addition to speaking directly with Valdez, Mary "left a very detailed, nasty message on [her] answering machine stating that [she] did not want to pay her debts…" Id. ¶ 13. Valdez's roommate listened to this message, hearing "the entire details of [Arm Wyn's] debt collection efforts." Id. ¶ 14. Approximately one week later, Mary called Valdez again and accused

her of "lying...as to the status of [her] employment." Id. ¶ 16. According to the complaint, Valdez "has suffered and continues to suffer humiliation, embarrassment, stress, aggravation, emotional distress, and mental anguish" as a result of Arm Wyn's actions.

On October 3, 2014, Valdez filed a motion for default under Rule 55(a) of the Federal Rules of Civil Procedure. The Clerk entered default against Arm Wyn on October 13, 2014. On May 5, 2015, Valdez filed this motion for default judgment under Rule 55(b). Valdez has indicated that she does not seek to be heard, so the motion is ripe for review on her written submissions alone.

## Standard of Review

Under Rule 55 of the Federal Rules of Civil Procedure, default judgment is a two-step process. See Jefferson v. Briner, Inc., 461 F. Supp. 2d 430, 433 (E.D. Va. 2006). Prior to entry of default judgment, there must be an entry of default. See Fed. R. Civ. P. 55(a). After default is entered by the Clerk, a party may move the court for default judgment under Rule 55(b).

Upon default, all of the well-pleaded facts alleged in the complaint may be taken as true. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) ("[T]he defendant, by his default, admits plaintiff's well-pleaded allegations of fact[.]") (internal citation omitted); see also Fed. R. Civ. P. 8(b)(6). Accordingly, in the default judgment context, the "appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein." Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, No. 99-1508, 1999 U.S. App. LEXIS 18633, at *2 (4th Cir. Aug. 10, 1999).

Although the well-pleaded factual allegations in a complaint are accepted as true for purposes of default judgment, a party who defaults does not admit allegations as to damages. See Fed. R. Civ. P. 8(b)(6) (providing that "[a]n allegation – other than one relating to the amount of

2

damages – is admitted if a responsive pleading is required and the allegation is not denied"). Consequently, if the court determines that the complaint establishes liability, it must then determine the appropriate amount of damages. Ryan, 253 F.3d at 780-81. In so doing, the court may conduct an evidentiary hearing under Rule 55(b)(2) or make a determination of damages without a hearing, so long as there is an adequate evidentiary basis in the record for the award. See Anderson, 155 F.3d at 507 (noting that "in some circumstances a district court entering a default judgment may award damages ascertainable from the pleadings without holding a hearing").

## Discussion

### I. Liability under the FDCPA

The FDCPA was enacted to protect consumers from abusive and deceptive practices by debt collectors and to protect non-abusive collectors from competitive disadvantage. United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 135 (4th Cir. 1996). It is "a strict liability statute that prohibits false or deceptive representations in collecting a debt, as well as certain abusive debt collection practices." McLean v. Ray, 488 F. App'x 677, 682 (4th Cir. 2012). To establish a violation of the FDCPA, the plaintiff must prove: (1) that the defendant is a "debt collector" as defined by the Act; (2) that the plaintiff has been the object of collection activity arising from a consumer debt; and (3) that the defendant has engaged in an act or omission prohibited by the Act. Ruggia v. Wash. Mut., 719 F. Supp. 2d, 642, 647 (E.D. Va. 2010). "Because the FDCPA is a strict liability statute, a consumer need only prove one violation to trigger liability." Grant-Fletcher v. McMullen & Drury, P.A., 964 F. Supp. 2d 514, 521 (D. Md. 2013).

According to the complaint's allegations, Arm Wyn "held itself out to be a company collecting a consumer debt allegedly owed by [Valdez]," which makes it a "debt collector" for

3

purposes of the FDCPA. See 15 U.S.C. § 1692a(6). Arm Wyn also repeatedly contacted Valdez in attempts to collect on an alleged consumer debt she owed. See Compl. ¶¶ 5, 7. In the process of doing so, Arm Wyn violated the FDCPA. Specifically, Arm Wyn violated 15 U.S.C. § 1692c(a)(2) by contacting Valdez directly after she informed Arm Wyn that she was represented by an attorney with respect to the debt at issue. See Compl. ¶¶ 10-16. By calling Valdez repeatedly over a short period of time, Arm Wyn also violated § 1692d(5) of the Act, which prohibits "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." See, e.g., Johnson v. BAC Home Loans Servicing, 867 F.Supp.2d 766, 780 (E.D.N.C. 2011) (finding debt collector harassed plaintiff "by making repeated phone calls with[in] a short time period"). Arm Wyn also violated § 1692c(b) by leaving a "nasty" voice message detailing Valdez's debt history on her answering machine, which her roommate heard.[1] See, e.g., Zortman v. J.C. Christensen & Assocs., Inc., 819 F.Supp.2d 874, 876 (D. Minn. 2011). For these reasons, the court concludes that Valdez has established that Arm Wyn has violated the FDCPA.

## II. Requested Remedies

Having concluded that Valdez has established a violation of the Act, the court must determine the relief to which she is entitled. Valdez seeks to recover actual damages, statutory damages, attorney's fees, and court costs.

Under 15 U.S.C. § 1692k(a)(1), an individual is entitled to recover "any actual damage sustained by such person as a result of [a debt collector's] failure [to comply with the FDCPA]."

---

[1] The complaint also alleges that this voice message violates provisions of 15 U.S.C. § 1692b, which limits how debt collectors can communicate with third persons "for purposes of acquiring location information about the consumer." The court finds that the complaint fails to state a claim for relief under this section, however, because it does not allege that Arm Wyn left the message for the purpose of "acquiring location information" about Valdez.

4

Actual damages under the Act may include damages for emotional distress. Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC, 929 F.Supp.2d 502, 536 (D. Md. 2013). Courts are "reluctant to award damages for emotional distress from violations of the FDCPA absent an aggrieved plaintiff receiving mental health treatment or evidence that emotional distress concretely affected a plaintiff's personal or professional life," however. Leto v. World Recovery Servs., LLC, No. 3:14-CV-00489, 2015 WL 1897060, *4-5 (W.D.N.C. April 27, 2015).

In this case, Valdez seeks $5,000 in actual damages for the "humiliation, embarrassment, stress, aggravation, emotional distress, and mental anguish" she experienced as a result of Arm Wyn's FDCPA violations. Compl. ¶ 18. Valdez has not provided a declaration or other evidence detailing her specific emotional injuries or how those injuries have hampered her life. Even when accepted as true, the court does not believe that a single boilerplate allegation, without more, supports an significant award of actual damages under the FDCPA. Accordingly, the court will order that Arm Wyn pay only $1,000 in actual damages. See Leto, 2015 WL 1897060, at *5-6.

Under 15 U.S.C. § 1692k(a)(2), an individual is also entitled to recover statutory "damages as the court may allow, but not exceeding $1,000." In determining the appropriate amount of statutory damages, the court must consider a number of factors, including the frequency and persistence of the debt collector's noncompliance, the nature of such noncompliance, and the extent to which the noncompliance was intentional. See 15 U.S.C. § 1692k(b)(1). Liability in this case arises from a series of phone calls designed to harass and embarrass Valdez. The court thus finds that Arm Wyn intentionally and repeatedly violated several provisions of the FDCPA. Accordingly, the court will order that Arm Wyn pay $1,000 in statutory damages.

5

In addition to actual and statutory damages, the court may award "the costs of the action, together with a reasonable attorney's fee" under 15 U.S.C. § 1692k(a)(3). The determination of attorney's fees and costs is "within the sound discretion of the court." Leto, 2015 WL 1897060, at *8 (citation omitted). To calculate a reasonable attorney's fee, the court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate to determine a "lodestar" figure. Id. The court is not required, however, to "engage in a lengthy discussion concerning what portion of the award is attributable to each factor." Id.

The court first considers the hours expended on this litigation. According to the affidavit of John C. Morgan, Valdez's attorney, a total of 15.6 hours have been expended on this matter. See Docket No. 8-3. The court has reviewed the records submitted in support of this figure and finds that the hours billed are reasonable and not redundant. The court will therefore compensate Valdez for all 15.6 hours.

The court next turns to whether the hourly rate sought by Valdez's counsel is reasonable. The party seeking a fee award bears the burden of

> establish[ing] the reasonableness of a requested rate. In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.

Leto, 2015 WL 1897060, at *9 (citation omitted). The sole evidence provided by Valdez is the affidavit of one of her attorneys, which lists the qualifications and rates of individuals working on Valdez's case. Valdez's attorneys and their support staff seek to be compensated at rates ranging from $450/hour for David Leibowitz, a "non-VA partner attorney," to $100/hour for Brandy Elliott, a case analyst. The affidavit does not provide any evidence of the prevailing rates of attorneys performing similar work in this market. The court is aware of the prevailing rates charged for

6

similar litigation in this area, however. See Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005) (stating that the court's inquiry into a reasonable attorney's fee may "include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district"). Based on its knowledge of the market, the court believes that the rates requested by some of Valdez's counsel exceed that which would reasonably be charged for similar work in this area. The court will therefore reduce the rates of the partner attorneys in this case to $250/hour. See, e.g., Docket Nos. 22, 23, No. 7:14-CV-00036 (W.D. Va. June 3, 2015) (awarding attorney's fees at the rate of $250/hour in FDCPA default judgment case). The court will also award Valdez the full amount of costs she seeks, including the $400 filing fee and $6.00 in copying and printing costs. Accordingly, the judgment in this case will include an award of attorney's fees and costs in the total amount of $3,613.50.

## Conclusion

For the reasons stated, the court will grant Valdez's motion for default judgment against Arm Wyn. Judgment will be entered in favor of Valdez and against Arm Wyn in the amount of $5,613.50, which consists of $1,000.00 in actual damages, $1,000.00 in statutory damages, and $3,613.50 in attorney's fees and costs. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

ENTER: This 12th day of June, 2015.

Chief United States District Judge

7